# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS

## UNITED STATES

v.

## John E. SIMMONS
### Machinery Technician Second Class (E-5), U.S. Coast Guard

**CGCMS 24920**
**Docket No. 1409**

**30 September 2015**

Special Court-Martial convened by Commander, Coast Guard Sector Key West.  Tried at Key West, Florida on 27 July 2011.

| | |
|---|---|
| Military Judge: | LCDR Casey Chmielewski, USCG |
| Trial Counsel: | LT  Travis M. Emge, USCG |
| Assistant Trial Counsel: | LCDR Michael R. Gesele, USCGR |
| Military Defense Counsel: | LT Brandon H. Sargent, JAGC, USN |
| Appellate Defense Counsel: | LT Philip A. Jones, USCGR |
| Appellate Government Counsel: | LCDR Amanda Lee, USCG |
| Appellate Government Counsel: | LT Lars Okmark, USCGR |

### BEFORE
### NORRIS, GILL[1] AND CLEMENS
Appellate Military Judges

NORRIS, Judge:

Appellant was tried by special court-martial, military judge alone.  Pursuant to his pleas of guilty, entered in accordance with a pretrial agreement, Appellant was convicted of one specification of larceny, in violation of Article 121, Uniform Code of Military Justice (UCMJ), two specifications of false official statements, in violation of Article 107, UCMJ, and one specification of conspiracy to commit larceny, in violation of Article 81, UCMJ.  The military judge sentenced Appellant to reduction to E-3, confinement for four months, and a bad-conduct discharge.  The Convening Authority approved the sentence, but vacated and remitted execution

---

[1] Judge GILL did not participate in this decision

of the bad-conduct discharge and confinement in excess of ninety days, in accordance with the pretrial agreement.

Before this Court, the Appellant contends that the post-trial processing prejudiced a substantial right of the Appellant.

### Preliminary issue

As a preliminary matter, we address appellate defense counsel's (ADC) 30 January 2015 motion to vacate the panel assignment order dated 14 January 2015. That order, which assigned this case to a panel composed of Judges Norris, Gill, and Clemens, was the product of a 7 January 2015 decision by the Coast Guard Judge Advocate General (TJAG), RADM S. D. Poulin, to assign Judge Norris as the senior panel member, and affording to Judge Norris the discretion to select the other two panel members.[2] In doing so, ADC asserts that the TJAG exceeded his authority under Article 66(a), UCMJ, to directly assign a panel member as opposed to appointing a chief judge. Because of this alleged *ultra vires* action, so the ADC argued, all derivative actions, including selection of the other two panel members and the assignment order of 14 January 2015 memorializing this selection, were similarly invalid.

On 22 April 2015, acting Chief Judge Havranek issued a panel assignment memo assigning Judges Norris, Gill, and Clemens to this case. That memo post-dated and superseded the panel assignment order of 14 January 2015 that was the subject of the ADC's motion to vacate. As a result, that motion is denied as moot. The three-judge panel was properly assigned to this case.

### Motion

The Government's Motion to Attach two documents to the Record of Trial, Appendices 1 and 2, is granted.

---

[2] This decision was memorialized in memorandum 5814 of 7 January 2015, subject "APPOINTMENT OF SENIOR PANEL MEMBER." RADM Poulin was called upon to select the senior panel member because Chief Judge McClelland recused herself from participation in this case.

**Post-trial Delay**

Processing of the record of trial (record or ROT) took place according to the following chronology. This chronology was established by reference to the record of trial and the ancillary documents attached to the record, including an affidavit executed by Coast Guard Senior Appellate Government Counsel.

| Date | Action | Days elapsed |
|------|--------|--------------|
| 27JUL11 | Sentence adjudged | 0 |
| 22AUG11 | ROT received from transcriptionist | 26 |
| 30SEP11 | ROT review completed by TC/ATC | 65 |
| 14OCT11 | ROT delivered to military judge | 79 |
| 15NOV11 | ROT authenticated by military judge | 111 |
| 16NOV11 | ROT delivered to DC and appellant | 112 |
| 22NOV11 | Staff Judge Advocate's Recommendation (SJAR) signed | 118 |
| 01DEC11 | SJAR addendum signed | 127 |
| 02DEC11 | Record received by convening authority | 128 |
| 16DEC11 | Convening Authority action | 142 |
| 26JAN12 | R.C.M. 1112(a) review conducted | 183 |
| 19DEC14 | Case referred to and docketed by CGCCA | 1,241 |

Notable periods of post-trial processing delay are 142 days from the date sentence was adjudged to the date of the Convening Authority (CA) action, and 1,099 days from CA action for the record to be docketed with this Court.

It is well established that post-trial delay can be the basis for relief. The Court of Appeals for the Armed Forces (CAAF) has established "a presumption of unreasonable delay that will serve to trigger the *Barker* four-factor analysis where the action of the convening authority is not taken within 120 days of the completion of trial [and] where the record of trial is not docketed by the service Court of Criminal Appeals within thirty days of the convening authority's action." *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006). The *Barker* analysis examines the following four factors to determine whether post-trial delay constitutes a due process violation: "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice." *Id.* at 135 (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). No single factor is required for finding a due process violation, and the

absence of a given factor will not prevent such a finding; rather, courts are required to engage in a "difficult and sensitive" balancing process. *Id.*

In this case, there are two instances of presumptively unreasonable delay. The CA's action occurred 142 days after the one-day trial was completed; the 22 days beyond the *Moreno* 120-day standard are presumptively unreasonable. The case was not docketed until 1,099 days after CA's action, which exceeds the *Moreno* standard by 1,069 days. To assess whether a due process violation has occurred because of this presumptively unreasonable delay, we carry out the *Barker* four-factor analysis.

As to the delay in CA action, 22 days beyond the 120-day standard is not egregious on its face. MK2 Simmons pled guilty in one day with a relatively short, 135-page transcript. This was not a complex case or lengthy record of trial.

As to the length of the delay between CA action and docketing the case with this court, 1,099 days is exceedingly long, especially when compared to the 30-day standard of presumptive unreasonableness.

With regard to the second *Barker* factor, the reason for the delay, a judge advocate of the servicing legal office, in his R.C.M. 1112(a) review, stated that the delay in CA action "was accounted for in the record of trial by including a chronology showing post-trial processing of the case, a description of the delays, and a concise explanation of the circumstances that contributed to the delays."[3] As a result, he opined that the delay was "reasonable under the circumstances." We concur with this assessment. It is apparent from the record that the government was very concerned about the 120-day clock, and was reasonably diligent in attempting to ensure CA action was taken within that time frame.

---

[3] ROT at 1. The record of trial contains a chronology sheet and a 1-page sheet entitled "Simmons Remarks" that supplements DD Form 490, the Record of Trial form completed in this case. Those remarks account for the delay, including a description of some "unforeseen circumstances" that contributed to the delay.

The Coast Guard's Appellate Government Counsel provided the following explanation of the 1,099-day delay between CA action and docketing with this court in an affidavit dated 20 March 2015[4]:

> The servicing legal office conducted an R.C.M. 1112 review in both cases.[5] Neither reviewer noted the fact that the BCD was approved (albeit suspended or remitted) and that the cases should immediately be referred to the Coast Guard Court of Criminal Appeals. When the records arrived in CG-0946 (Appellate Government Counsel), the records custodian, likely seeing the R.C.M. 1112 review, assumed the cases would be reviewed under Article 69(b). They were processed as Article 69(b) cases and sent to the office designated to handle Article 69 reviews without having been reviewed by any attorney in CG-0946. The records were not reviewed by the Article 69 reviewing officer until late fall of 2014, at which time the reviewer recognized that the sentence in both cases included an approved BCD. The cases were then forwarded to the Coast Guard Court of Criminal Appeals on 19 December 2014.[6]

Appellate Government Counsel's explanation of the delay to refer and docket the case with this Court highlights that the wrong process was applied by the government; namely, the process failed to identify the legally sufficient review that was required and failed to properly route the record for that review. The government's assertion that this failing was not attributable to bad faith or bad intent is not relevant to the *Barker* analysis; as the government acknowledges, "delays based on administrative matters" do not excuse surpassing the timelines, *Moreno*, 63 M.J. at 143, and the essentially clerical task of docketing the case has been categorized as "the least defensible of all" post-trial delays. *United States v. Dunbar*, 31 M.J. 70, 73 (C.M.A. 1990). However, these assertions do make clear that the Government had complete and exclusive control over the review process, and thus only the government is responsible for this period of delay.

For these reasons, notwithstanding our conclusion that the government was reasonably diligent in its effort to ensure that CA action took place within 120 days of completion of trial,

---

[4] Appendix 1 to the "Answer and Brief on Behalf of the United States, and Motion to Attach," 20 March 2015.

[5] A companion case involving Appellant's co-conspirator was being processed simultaneously with the instant case. *See U.S. v. Gonzalez*, No. 1410 (C.G.Ct.Crim.App. 09 September 2015).

[6] U.C.M.J. Article 66 mandates referral to a Court of Criminal Appeals of all cases in which, *inter alia*, a sentence, as approved, contains a punitive discharge. Under Article 69, a *sua sponte* review is conducted by the office of the Judge Advocate General of all cases not otherwise reviewed under Article 66. The approved sentence in this case included a bad conduct discharge, and therefore referral to the CGCCA was by Article 66.

the first and second *Barker* factors, length and reasons for delay, weigh strongly against the Government.

As to the third *Barker* factor, Appellant did not assert the right to timely review and appeal at any stage in the post-trial process until his submission of his assignment of errors before this court on 18 February 2015. His failure to do so regarding the delay in CA action, at a time when he was being actively represented by his trial defense counsel, weighs slightly against him. Appellant's failure to challenge the delay in docketing his case before this court cannot be held against him in any way, since he was not entitled to an appellate defense counsel until the case was docketed, and thus was deprived of the guidance such counsel may have provided him. In light of these considerations, while Appellant's failure to assert his right to timely review and appeal is a factor that weighs in the negative to him, it does so only slightly.

As to the fourth *Barker* factor, prejudice to the Appellant, *Moreno* identified three sub-factors: oppressive incarceration pending appeal, anxiety and concern, and impairment of ability to present a defense at a rehearing. *Moreno*, 63 M.J. at 139-40. Both the first and third sub-factors depend upon a successful appeal on other issues, which is not present in Appellant's case. Concerning anxiety and concern, to be cognizable, it must be "particularized anxiety and concern that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision." *Id.* at 140. Appellant does not assert any particularized anxiety and concern relating to the delay; nor is any apparent on the record. Thus, as to the fourth Barker factor, Appellant has suffered no prejudice from the delay.. *United States v. Toohey*, 63 M.J. 353, 361 (C.A.A.F. 2006).

Although "no single factor [is] required to find that post-trial delay constitutes a due process violation," *Moreno*, 63 M.J. at 136, in the absence of *Barker* prejudice, a due process violation only exists "when, in balancing the other three factors, the delay is so egregious that tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system." *Toohey*, 63 M.J. at 361-62. In *Toohey*, the convening authority's action took place 644 days after the date of sentence, and the Court of Criminal Appeals issued its decision 2,240 days (more than six years) after the date of sentence. *Id.* at 357. Additionally, in

*Toohey* the third factor weighed in favor of the Appellant. *Id.* at 361. As a result, despite the absence of *Barker* factor four prejudice, CAAF determined that Appellant Toohey was denied his due process right to speedy review and appeal. *Id.* at 362.

The facts of the instant case are not as egregious as those presented in *Toohey*. Despite that, we conclude that the length and circumstances involved in the delay were sufficiently egregious that tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system. Even simple negligence such as failing to properly route a record, when left unaddressed for more than three years, has a deleterious impact that will impart the perception of ineffectiveness to a reasonable person. As a result, we hold that Appellant was denied his due process right to speedy review and appeal. *Accord United States v. Gosser*, 64 M.J. 93, 97-99 (C.A.A.F. 2006) (1,303 days from sentencing to court of criminal appeals decision constituted a denial of due process, despite the absence of prejudice).

Where a court finds constitutional error, it grants relief unless it is convinced beyond a reasonable doubt that the constitutional error is harmless. *See United States v. Kreutzer*, 61 M.J. 293, 298 (C.A.A.F. 2005) (citing *Chapman*, 386 U.S. at 24). The government bears the burden of demonstrating that a constitutional error is harmless beyond a reasonable doubt. *United States v. Cendejas*, 62 M.J. 334, 337 (C.A.A.F. 2006) (citing *United States v. Simmons*, 59 M.J. 485, 489 (C.A.A.F. 2004)); *United States v. Grooters*, 39 M.J. 269, 273 (C.M.A. 1994) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 296, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991)). We apply a *de novo* standard of review to the question of harmlessness beyond a reasonable doubt. *Cendejas*, 62 M.J. at 337; *Kreutzer*, 61 M.J. at 299; *United States v. Grijalva*, 55 M.J. 223, 228 (C.A.A.F. 2001) (citing 2 Steven Childress & Martha Davis, Federal Standards of Review § 7.03, at 7-10 (3d ed. 1999)). Where we cannot say beyond a reasonable doubt that deprivation of the due process right to a speedy review and appeal is harmless, we must consider what relief, if any, to afford. *See Jones*, 61 M.J. at 86.

The government asserts that post-trial delay was harmless. Appellant was administratively separated from the Coast Guard and received his DD-214 well before his record reached this Court. We have found that there was no *Barker* prejudice. Considering the totality

of the circumstances in this case, we are confident beyond a reasonable doubt that this delay was harmless. As a result, no relief is warranted on the basis of this analysis.

This does not end our inquiry. A Court of Criminal Appeals has "authority under Article 66(c) to grant relief for excessive post-trial delay without a showing of "actual prejudice" within the meaning of Article 59(a), if it deems relief appropriate under the circumstances." *United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002). In exercising this responsibility, the Court is to "determine what findings and sentence "should be approved," based on all the facts and circumstances reflected in the record, including the unexplained and unreasonable post-trial delay." *Id.*

A delay of 22 days for the convening authority to take action, and of 1,099 days following such action to docket the case with this Court, surely bespeaks a lack of institutional diligence. *See United States v. Holbrook*, 64 M.J. 553, 557 (C.G.Ct.Crim.App. 2007). We find the delays unreasonable, warranting some relief. We will consider the delays when conducting our sentence appropriateness review under Article 66, UCMJ.

### Decision

We have reviewed the record in accordance with Article 66, UCMJ. Upon such review, the findings and sentence are determined to be correct in law and fact and, on the basis of the entire record, should be approved. Accordingly, the findings of guilty are affirmed. In view of our finding of unreasonable post-trial delay, only so much of the sentence as provides for a bad-conduct discharge (vacated and remitted below) and reduction to E-3 is affirmed.

Judge CLEMENS concurs.

For the Court,



DuJuan E. Brown
Clerk of the Court